UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

THE VELVET UNDERGROUND,                          :
a Partnership, by its General Partners,          :      12 Civ.         ( )( )
John Cale and Lou Reed,                          :
                                                 :      ECF Case
                                   Plaintiff,    :
                                                 :
              – against –                        :
                                                 :      COMPLAINT
THE ANDY WARHOL FOUNDATION                       :
FOR THE VISUAL ARTS, INC.,                       :      JURY TRIAL
                                                 :      DEMANDED
                                   Defendant.
------------------------------------------------------------------- x

Plaintiff The Velvet Underground, by its attorneys, Christopher R. Whent and Clifford James, for its complaint, alleges as follows:

**Nature of the Action and Relief Sought**

1. Defendant The Andy Warhol Foundation For The Visual Arts, Inc. (the "Warhol Foundation") has infringed the trademark of Plaintiff The Velvet Underground ("VU") consisting of a certain Banana design (the "Banana design" or the "Mark"), described by *The New York Times* (the "*Times*") as "iconic" in relation to VU.[1] The Warhol Foundation has continued to infringe the Mark by licensing its use by third parties in a manner likely to cause confusion or mistake as to the association of VU with the goods sold in commerce by such third parties, or as to the sponsorship or approval by VU of such goods, despite having acknowledged, by its counsel, receipt of VU's repeated written demands to cease infringing activities.

---

[1] Cator Sparks, *Pop Shop | Andy Warhol for Incase*, N.Y. Times, Apr. 8, 2011 (Style Magazine section); Cator Sparks, *Bananas for Apples*, N.Y. Times, Apr. 24, 2011 (Style section of the Sunday edition). See ¶ 12 & note 14; ¶ 13 & note 15.

Consequently, VU brings this action under the Lanham Act, and the common law of New York State, for appropriate relief, including, without limitation, an award of attorneys' fees.

2. The Warhol Foundation has sought to justify its unlawful licensing activities involving the Mark by asserting that it has a copyright interest in the Banana design, despite the incontrovertible fact that the Banana design, insofar as copyright rights are concerned, is in the public domain. The Banana design was first published in 1967, and continuously and repeatedly afterwards, without any copyright notice, and neither Andy Warhol, the Warhol Foundation, nor anyone else, has applied for registration of any copyright or deposited any sample of the work with the Copyright Office. Under the applicable copyright law—which is the Copyright Act in effect from July 1, 1909 through December 31, 1977 (the "1909 Act")—such publication without a copyright notice irrevocably placed the Banana design in the public domain, if it was not there already.[2] Consequently, VU also seeks a declaration, under applicable copyright law, and pursuant to 28 U.S.C. §§ 2201 and 2202, that the Warhol Foundation has no copyright rights or interest in the Banana design.

**Factual Background**

3. VU is the business entity formed by the rock group "The Velvet Underground,"[3] regularly active as musical performers from 1964 through 1973, and often described as one of the most important and influential groups of the 1960s. In 2003, the music magazine *Rolling Stone* named The Velvet Underground's first commercially released album entitled *The Velvet Underground and Nico* the 13th

---

[2] See ¶ 18 & note 16.

[3] When it is useful or necessary to distinguish the rock group and its members from plaintiff as a business entity, the group is referred to as "The Velvet Underground." The term VU, however, should be read to include the group itself, and its members, unless the context otherwise requires.

"Greatest Album of All Time," and described the album as the "most prophetic rock album ever made." [4] That album is commonly known as *The Banana Album* because its cover artwork featured the Banana design—an illustration of a banana selected for the purpose by artist Andy Warhol from an element of an advertisement in the public domain.

4. John Cale and Lou Reed, together with Sterling Morrison and Angus MacLise, formed the band in or about January 1965 under the name "The Warlocks" or "The Falling Spikes." In or about November 1965, the band changed its name to "The Velvet Underground," and Maureen Tucker replaced Angus MacLise. In or about December 1965, Andy Warhol attended performances by The Velvet Underground, and began a collaborative association with the band. The Velvet Underground became regular habitués of the Warhol studio known as The Factory, and as such the band contributed soundtracks to motion pictures by Andy Warhol, and were engaged as part of a Warhol-directed light show know as the "Exploding Plastic Inevitable." In or about February 1966, in an interview for WNET, Andy Warhol announced that he was sponsoring a "new band, The Velvet Underground."

5. During 1966, the band recorded the songs that were later to be included on *The Velvet Underground and Nico* album (at the suggestion of Andy Warhol, Christa Paeffgen, professionally known as Nico, sang three of the songs). The band conveyed the exclusive rights to the recordings to the record division of Metro-Goldwyn-Mayer, Inc. ("MGM Records") pursuant to a royalty contract dated May 2, 1966, that provided for an advance of $3,000, which the band split with

---

[4] http://www.rollingstone.com/music/lists/500-greatest-albums-of-all-time-19691231; http://www.rollingstone.com/music/lists/500-greatest-albums-of-all-time-19691231/the-velvet-underground-the-velvet-underground-and-nico-19691231. The Beatles' album *Abbey Road* was rated 14th, and Miles Davis's *Kind of Blue* was rated 12th.

Andy Warhol in part in consideration for his furnishing the illustration for the record cover.[5]

6. The illustration Andy Warhol furnished for the front cover of *The Velvet Underground and Nico* album consisted of a banana design and a stylized "Andy Warhol" signature.[6] In March 1967, MGM Records published *The Velvet Underground and Nico* album on its Verve imprint without any copyright symbol or other attribution of copyright ownership relating to the Banana design. After release, the album was briefly withdrawn in consequence of a claim that a back cover photograph furnished by Andy Warhol (having nothing whatever to do with the Banana design) was infringing; the album was later republished with changes to the back cover, and, again without any copyright notice relating to the Banana design. A copy of the iconic Banana design (taken from the Internet) as it appeared on the album is annexed as Exhibit 1.[7]

7. This debut album by The Velvet Underground was not a commercial success on its initial release, despite its Warhol-designed cover and sponsorship. However, its uncompromising and iconoclastic version of rock music did catch the attention

---

[5] According to Paul Marechal, *Andy Warhol: The Record Covers 1949–1987, Catalogue Raisonné* (Munich, London, New York: Prestel Publishing 2008), Andy Warhol designed more than fifty record covers starting in 1949, the earliest being amongst his earliest commissioned works, with most including a stylized Andy Warhol signature. The cover for *The Velvet Underground and Nico* album was, however, the work of and attributed to Acy R. Lehman, a noted graphics designer who as art director at MGM Records and RCA Records created award-winning album covers for many record albums, starting in 1964.

[6] According to John Cale, Andy Warhol also suggested that the Banana design be made peelable, such that when peeled back, it revealed the same design below in a different color. The added expense that this entailed has meant that later editions of the album have lacked this feature; it was, however, reinstated when VU used the Banana design as the cover of a 5 CD retrospective box set of VU recordings issued in 1995 and currently still available.

[7] This image on the Internet appears as a "thumbnail," with a stated resolution of 350 × 350 pixels, and the legend, "No higher resolution available." This is the reason the words "Peel Slowly and See," appearing immediately to the right of the stem of the banana, are not legible.

of young musicians; one prominent musician commented that the "album only sold ten thousand copies, but everyone who bought it formed a band."[8] Twenty years after its first release, *The Banana Album* was recognized, as noted, as one of the great rock albums, and The Velvet Underground as one of the most influential of rock bands.

8. The Velvet Underground broke up as a performing unit in 1972. But, while its members followed diverse career paths after that, they were ever afterwards identified in the public eye as "former members of The Velvet Underground," in large part because of the respect and affection engendered by their uncompromising attitude towards their music, and their rejection of compromise needed to achieve immediate commercial success. Their reputation as members of The Velvet Underground continued to grow and, in the 1980s, due to the accolades that their music had continued to garner, Polygram Records, Inc., which by then owned the assets of MGM Records (for whom The Velvet Underground made most of its recordings), reissued all those recordings in new editions together with material that had been recorded in the late 1960s but never released.[9] Since then, The Velvet Underground's recordings have remained available throughout the world and continue to sell to their decidedly strong and loyal audience, which constantly grows. The goodwill of The Velvet Underground's activities, and of its constituent members, has in reality become global, extending to all parts of the world.

9. Concomitant with that, the Banana design became a symbol, truly an icon, of The Velvet Underground. What had been the cover design for one album, *The Velvet Underground and Nico*, became an element of multiple different CD and DVD

---

[8] The statement is usually attributed to Brian Eno or Peter Buck, and has even been attributed to Courtney Love.

[9] For example, a reproduction of the cover of the CD version of *The Velvet Underground and Nico* album, released in 1986, is annexed as Exhibit 2.

recordings embodying music by The Velvet Underground, and, more broadly, a symbol of the group The Velvet Underground and its members even in non-musical contexts. For example, the Banana design became a recurring visual theme in connection with a Velvet Underground reunion performing tour in Europe in 1993,[10] and the cover design for the compact disc albums, the VHS tape and the DVD that resulted from that tour, used the Banana design.[11] As previously noted (see note 6), the 5 CD retrospective tribute album entitled *Peel Slowly And See* that was released in 1995 also used the Banana design, expressly noting in the booklet packaged with the CD that the design was a trademark of VU.[12] In 2001, licensed by VU, Absolut vodka used the Banana design in an "Absolut Underground" national advertisement; the advertisement noted that the Banana design is a trademark of VU.[13]

10. The Banana design is a significant element of VU's ongoing licensed merchandising activity. VU's use and application of the design to symbolize the group and its whole body of work has been exclusive, continuous, and uninterrupted for more than 25 years. As a result, the symbol has become so identified with The Velvet Underground and its members as a group, and of their identity as creators and the goodwill associated with them, that members of the public, and particularly those who listen to rock music, immediately recognize the Banana design as the symbol of The Velvet Underground, and link the same to The Velvet Underground and its members, such that the Banana design has developed and now possesses secondary and distinctive meaning to purchasers of goods bearing the Banana design.

---

[10] Artwork for an advertisement for a London arena concert is reproduced as Exhibit 3, and the cover for the tour booklet is reproduced as Exhibit 4.

[11] The front cover of the VHS live recording is reproduced as Exhibit 5.

[12] The cover of *Peel Slowly And See* is reproduced as Exhibit 6.

[13] The advertisement is reproduced as Exhibit 7.

11.  Recognizing its responsibilities to the public purchasing goods bearing the Banana design, VU reviews each licensed use of its Mark and retains control over such uses to protect the buyers, and to assure themselves that the goods in question are of the quality, and type that the implied endorsement warrants.

12.  Within the past year, VU learned from an article in the *Times*, dated April 8, 2011, that:

> [T]he Andy Warhol Foundation [has] agreed to lend [Warhol's] work to a new series of iPhone and iPad cases, sleeves and bags from Incase. For the first in a series of four, they chose to focus on the iconic 1966 banana that Warhol created for the Velvet Underground's self-titled album . . . .[14]

VU promptly notified the Warhol Foundation that: (a) the Banana design has, and had acquired, secondary meaning as a mark of the VU; (b) the Warhol Foundation's purported licensing of the Mark to Incase and others was unauthorized; and (c) the Warhol Foundation's indiscriminate and unauthorized licensing of the Mark was likely to lead to confusion as to the affiliation, approval or sponsorship by VU of the goods in connection with which the Warhol Foundation had purported to license the Mark.

13.  In August 2011, the *Times* did a follow-up story that again confirmed VU's protectable interest in the Banana design, and validates VU's concerns with the Warhol Foundation's unlawful purported licensing of it. The *Times* reported that the Warhol Foundation had expanded its licensing of Warhol designs on Incase products for use with Apple's iPhone and iPad and other goods. Notably, in this

---

[14] Cator Sparks, *Pop Shop | Andy Warhol for Incase*, N.Y. Times, Apr. 8, 2011 (Style Magazine section). http://tmagazine.blogs.nytimes.com/2011/04/08/pop-shop-andy-warhol-for-incase/?scp=3&sq=warhol+foundation+iphone&st=nyt.
The *Times* repeated the text of this article on April 24, 2011 in the Style section of its Easter Sunday edition under the headline *Bananas for Apples*. http://query.nytimes.com/gst/fullpage.html?res=9505E5DF1F38F937A15757C0A9679D8B6 3&scp=4&sq=warhol+foundation+iphone&st=nyt.

article the *Times* referred to the earlier purported license by the Warhol Foundation of the Banana design as: "[T]he screen print of a banana featured on the cover of the influential album 'The Velvet Underground and Nico.' "[15]

14. Despite VU's repeated demands that the Warhol Foundation cease its continuing infringement of VU's rights in the Mark, defendant has continued to infringe VU's rights.

15. In response to VU's communications, the Warhol Foundation has asserted that VU has no trademark rights in the Mark, and that the Warhol Foundation "may have" a copyright interest in the design. Consequently, VU brings this action under the applicable copyright laws of the United States, and under Section 43(a) of the Lanham Act (28 U.S.C. § 1125(a)).

**Parties**

16. Plaintiff The Velvet Underground is a New York partnership, with its principal office located at 270 Madison Avenue, Suite 1410, New York, NY 10016.

17. Upon information and belief, at all times relevant herein, Defendant The Andy Warhol Foundation For The Visual Arts, Inc. was and is a New York Not-For-Profit corporation, has its principal place of business in the Southern District of New York, and transacts substantial business in the Southern District of New York and New York State.

---

[15] Roy Furchgott, *Another 15 Minutes of Fame for an iPad Case*, N.Y. Times, Aug. 22, 2011 ("Gadgetwise" feature in the Personal Tech section). http://gadgetwise.blogs.nytimes.com/2011/08/22/another-15-minutes-of-fame-for-an-ipad-case/?scp=1&sq=warhol+foundation+iphone&st=nyt. This story too the *Times* repeated (in print in part) on August 25, 2011 in the Business Day section. http://query.nytimes.com/gst/fullpage.html?res=9A0CE3D91638F936A1575BC0A9679D8B63&scp=2&sq=warhol+foundation+iphone&st=nyt.

**Jurisdiction and Venue**

18. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) in that the controversy arises under Acts of Congress relating to copyrights and trademarks, and also, with regard to trademarks, under 15 U.S.C. § 1121. As to copyrights, the action arises under the 1909 Act, namely, the Act of March 4, 1909, which was the copyright law of the United States in effect as it was amended from July 1, 1909 through December 31, 1977, 17 U.S.C. § 1, *et seq*. (The currently effective copyright law, the Copyright Revision Act of 1976, as it may have been amended from time to time, 17 U.S.C. § 101, *et seq*. (the "1976 Act"), explicitly provides that it confers no copyright protection to works that went into the public domain before its effective date of January 1, 1978.[16]) As to trademarks, the action arises under The Lanham Act of 1946, as it may have been amended from time to time, 15 U.S.C. § 1051, *et seq.*, and more particularly § 1125(a). This Court has jurisdiction of the remaining claims for relief under New York State common law pursuant to the doctrine of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a).

19. This Court has personal jurisdiction over defendant pursuant to principles of general jurisdiction under the Constitutions of the United States and New York State, and as set forth in section 301 of the Civil Practice Law and Rules of New York State, in that defendant is domiciled in and/or resides in New York State.

20. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), and (c), and/or 28 U.S.C. § 1400(a), in that, upon information and belief, defendant is found and

---

[16] Copyright Revision Act of 1976, Pub. L. No. 94–533, 90 Stat. 2541, sec. 103 of the Transitional and Supplementary Provisions of that act, which, as the Copyright Office publicly states, contain provisions that do not amend title 17 of the United States Code. See Copyright Office circular 92, Appendix A.

resides in the Southern District of New York and/or a substantial part of the events or omissions giving rise to this action occurred in this District.

## Claims for Relief

### Count I

### *Declaratory Judgment*
### *(There Are No Copyright Rights in the Banana Design)*

21. Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 20 as if fully set forth in this paragraph.

22. Plaintiff earns income annually to supplement its record royalty income by licensing the reproduction of the Banana design. Plaintiff has conducted such licensing for over 25 years.

23. Upon information and belief, the Warhol Foundation is the owner of all right, title and interest in certain copyrighted works created by Andy Warhol.

24. The copyrighted works created by Andy Warhol defendant owns are among its principal assets, upon information and belief having a current fair market value in excess of $120 million.

25. Upon information and belief, defendant earns in excess of $2.5 million annually by licensing rights to reproduce the copyrighted Andy Warhol works that it owns.

26. In or about December 2009, the Warhol Foundation's intellectual property counsel wrote to plaintiff describing plaintiff's licensed uses of the Banana design as an instance of copyright infringement.

27. Plaintiff expressly rejected defendant's claim of a copyright interest in the Banana design and noted in response that the Banana design had acquired secondary meaning and was a trademark of plaintiff.

28. In none of defendant's correspondence before April 2011 did defendant's intellectual property counsel admit that defendant had included the Banana design when licensing Andy Warhol designs for reproduction on the goods of third parties.

29. In April 2011, it came to the attention of plaintiff in consequence of an article in the *Times* that defendant had licensed for reproduction on cases for iPhones, iPads, and other products, the Banana design, which the *Times* described as "the iconic 1966 banana that Warhol created for the Velvet Underground's self-titled album." [17]

30. Plaintiff promptly notified defendant that the use of the Banana design by defendant's licensee was likely to cause consumer confusion, and lead consumers to believe that there was an affiliation or association between plaintiff and defendant's licensee; plaintiff further complained that defendant was exploiting the goodwill that plaintiff had built up over the years, and which was vested in the Banana design, and that defendant was unfairly competing with plaintiff. Plaintiff demanded that defendant cease and desist from its infringing acts.

31. Responding to plaintiff's demand, defendant's intellectual property counsel for the first time in the correspondence admitted that "The Banana design has been a consistent and prominent part of the [Warhol] Foundation's licensing programs for a number of years."

---

[17] See ¶ 12 & note 14.

32. Plaintiff in turn reiterated that defendant had no copyright interest in the Banana design and that the only intellectual property rights in the design that could be claimed were *plaintiff*'s rights of trademark, and *plaintiff*'s right of publicity.

33. Defendant nevertheless continued, and continues to assert, that defendant "may have a copyright interest in the Banana design" and that such gives it a right to license reproduction of the Banana design.

34. To the extent the Banana design was created by Andy Warhol, it was created in or about 1966, and published by MGM Records in 1967 as the front cover design of the phonograph record album *The Velvet Underground and Nico*.

35. When it was so published, that phonograph record album bore no notice of copyright related to the front cover design.

36. Andy Warhol did not deposit with the Copyright Office any copy of the Banana design, nor did anyone else.

37. Under applicable copyright law, *i.e.*, the 1909 Act: (a) statutory copyright law (title 17 of the United States Code) applies to any published work (*i.e.*, after publication, title 17 supersedes and replaces any existing common law copyright rights that may have existed before publication); and (b) in order to obtain statutory copyright protection, the published work must display a copyright notice in the form prescribed by the 1909 Act. Thereafter copies must promptly be deposited with the Copyright Office, which would then issue a certificate of claim to copyright to the claimant. 17 U.S.C. §§ 1, 10, 11, 13, 209 (1909 Act).

38. Thus, a work published without copyright notice was both divested of any common law copyright, and did not obtain statutory copyright—even if otherwise copyrightable—and the work was consequently irrevocably thrust into the public domain. Moreover, as noted, the 1976 Act expressly provides no

copyright protection to works that entered the public domain before the 1976 Act's effective date of January 1, 1978.

39. Defendant's claim of the right to license the reproduction of the Banana design under color of the rights of a copyright proprietor, and its claims of infringement of copyright against plaintiff, have created an actual, substantial and justiciable controversy between plaintiff and defendant concerning plaintiff's rights to the Mark, including plaintiff's past licensing activities and its right to continue to license reproduction of the Banana design.

40. By reason of the foregoing, the Court should enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, holding that the Banana design is in the public domain, and that as a design it cannot constitute property of the Warhol Foundation the use of which by VU would constitute infringement of any cognizable rights of the Warhol Foundation.

41. Further, pursuant to 28 U.S.C. § 2202, plaintiff is entitled to have defendant account for any revenues collected attributable to defendant's licensing, or other exploitation, of the Banana design.

**Count II**

*False Designation of Origin*
*(15 U.S.C. § 1125(a)(1)(A) [section 43(a)(1)(A) of the Lanham Act])*

42. Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 41 as if fully set forth in this paragraph.

43. The Banana design is inherently distinctive, and has long-established secondary meaning, and, as such is firmly associated with rock group The Velvet Underground. Consistent with VU's protectable interest in the Mark, for at least

25 years VU has exercised its rights in the Mark, and licensed the Mark's use on goods.

44. Defendant has unlawfully, and without any right or privilege to do so, purported to license the Mark on consumer goods, and caused such goods to be in interstate commerce.

45. The use of the Mark on goods purportedly licensed by defendant will likely cause, and continue to cause, confusion, mistake or deception as to the source or affiliation of such third party goods.

46. Defendant's unauthorized use of the Mark falsely indicates that The Velvet Underground, its members, or VU are connected with, sponsored, endorsed, authorized, or approved, or are in some way affiliated with defendant's purported licensees, or that such purported licensees are connected with, sponsored, endorsed, authorized or approved by, or otherwise affiliated with The Velvet Underground or VU.

47. Defendant's licensees' unauthorized use of VU's Mark in connection with such licensees' goods allows defendant and such licensees to receive the benefit of VU's goodwill, which VU has established at great labor and expense, and further allows such licensees to gain acceptance of their goods, based not on their own qualities, but on the reputation, investment, hard work and goodwill of VU, and The Velvet Underground and its members.

48. Defendant's purported licensing of VU's Mark constitutes a false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. Defendant's unlawful activities have caused, and unless enjoined will continue to cause, irreparable injury to VU. Damages and other monetary amounts alone cannot adequately remedy the injury to plaintiff caused by defendant.

50. Consequently, VU is entitled to an injunction preventing defendant, and any person or entity affiliated with defendant or purporting to represent defendant's interests, from asserting any right, title, or interest in the Mark, or continuing to license, attempting to license, or exploiting the Mark in any manner.

51. In addition, pursuant to the Lanham Act, plaintiff may also recover such damages, profits, and other monetary amounts from defendant as may be determined at the trial of this action.

52. VU expressly reserves the right to supplement or amend this complaint, or both, as may be appropriate in light of further incidents of infringement of its rights under the Lanham Act that may be uncovered through discovery in this action or otherwise.

**Count III**

*Unfair Competition Under New York Common Law*

53. Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 41 as if fully set forth in this paragraph.

54. As a result of defendant's use of plaintiff's Mark, defendant has diverted to itself value created in the Mark by its association with plaintiff, caused confusion amongst purchasers of goods approved by plaintiff, and diminished the value of the Mark.

55. In addition, the Warhol Foundation's actual assets and business activities establish defendant's intent to compete unfairly with VU. Thus, upon information

and belief, the Warhol Foundation owns all right, title and interest in many hundreds and possibly thousands of original designs by Andy Warhol that, as noted, have a fair market value in excess of $120 million.

56. Upon information and belief, since in or about 2005, the Warhol Foundation has actively licensed these designs, according to a representative, for use on a "wide array of goods, spanning stationery, calendars, clothing, watches, table top, [*sic*] and . . . snowboards." This is consistent with Andy Warhol's statement that he would "endorse . . . anything" for money.

57. Inasmuch as the Warhol Foundation has such a large number of Andy Warhol designs, all of which are presumably unique works that are highly valued in the marketplace, there would appear to be no economic need to include the Banana design among the designs that defendant licenses based on their status as works created by Andy Warhol.

58. To the extent that the Banana design is considered to be a work created by Andy Warhol, the Banana design is fungible, and may be replaced or substituted for by any of the other many works that the Warhol Foundation actually owns and that it claims are in high demand by licensees.

59. The only reason for the Warhol Foundation to include the Banana design in any design licensing activity, rather than any other Andy Warhol design, is to capitalize on the goodwill established by VU and vested in the symbol. It is not merely the graphic reproduction by Andy Warhol of a piece of fruit: it is the "iconic" VU Banana.

60. Defendant's foregoing acts infringe VU's Mark, constitute unfair competition under the common law of the State of New York, and have been in disregard of and with indifference to VU's rights.

61.  VU is entitled to recover from defendant such damages resulting from defendant's unfair competition, and such exemplary damages, as may be proved at the trial of this action.

62.  However, damages and other monetary amounts alone cannot adequately remedy the injury to plaintiff caused by defendant. Defendant's unlawful activities have caused, and unless enjoined will continue to cause, irreparable injury to VU.

63.  Consequently, VU is entitled to an injunction preventing defendant, and any person or entity affiliated with defendant or purporting to represent defendant's interests, from asserting any right, title, or interest in the Mark, or continuing to license, attempting to license, or exploiting the Mark in any manner.

64.  VU expressly reserves the right to supplement or amend this complaint, or both, as may be appropriate in light of further incidents of unfair competition that may be uncovered through discovery in this action or otherwise.

### Count IV

### *Misappropriation Under New York Common Law*

65.  Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 41, and 54 through 64, as if fully set forth in this paragraph.

66.  Defendant has diverted to itself value created in the Mark by the Mark's association with plaintiff.

67.  Defendant's acts in doing so constitute misappropriation of plaintiff's benefits and property rights in the Mark and its potential earnings in realization thereof.

68. VU is entitled to recover from defendant such damages resulting from defendant's misappropriation, and such exemplary damages, as may be proved at the trial of this action.

69. However, damages and other monetary amounts alone cannot adequately remedy the injury to plaintiff caused by defendant. Defendant's unlawful activities have caused, and unless enjoined will continue to cause, irreparable injury to VU.

70. Consequently, VU is entitled to an injunction preventing defendant, and any person or entity affiliated with defendant or purporting to represent defendant's interests, from asserting any right, title, or interest in the Mark, or continuing to license or attempting to license the Mark.

71. VU expressly reserves the right to supplement or amend this complaint, or both, as may be appropriate in light of further incidents of misappropriation of its rights and property that may be uncovered through discovery in this action or otherwise.

**Allegations Concerning Exemplary Damages**

72. Defendant purported to license the Banana design with full knowledge that VU had and has a protectable interest in that Mark, and that VU has never had any copyright rights in the Mark. In so doing, The Warhol Foundation has acted in all respects maliciously, intentionally, and wantonly, and sought, knowingly and in bad faith, to deceive the public.

**WHEREFORE**, Plaintiff The Velvet Underground demands judgment as follows:

A. On Count I of the complaint:

   1. Declaring that:

    a) The Warhol Foundation has no copyright rights in the Banana design, because, under applicable statutory copyright law, all such potential rights were placed in the public domain; and

    b) The use of the Banana design by VU cannot infringe any copyright rights that the Warhol Foundation has asserted or may attempt to assert.

2. Compelling defendant to account for all monies received by defendant, or any affiliated person or entity, or any agent or representative of defendant, attributable to defendant's claim that it owns or possesses any right, title, or interest in a purported copyright in the Banana design.

3. Pursuant to 28 U.S.C. § 2202, awarding plaintiff such other and further necessary and proper relief based on the declaratory judgment the Court may grant.

B. On Count II of the complaint:

1. Pursuant to 15 U.S.C. § 1117(a) (section 35(a) of the Lanham Act), an award of:

    a) Defendant's profits, together with interest;

    b) Damages, trebled, together with interest; and

    c) The full costs incurred by VU in this action, including without limitation, its attorneys' fees.

2. Pursuant to 15 U.S.C. § 1116 (section 34 of the Lanham Act), enjoining and restraining defendant from licensing or purporting to license, the Banana design for any purpose, including, without limitation, the manufacture, sale, or marketing of any product that exploits in any way the Banana design, and from representing to third parties that defendant owns, or has any right, title, or interest in, the Banana design.

3. Pursuant to 15 U.S.C. § 1118 (section 36 of the Lanham Act), ordering defendant to destroy all copies of the infringing products in defendant's possession, custody or control (including, therefore, without limitation, such products manufactured or maintained by defendant's purported licensees).

4. Such other and further relief pursuant to the Lanham Act as the Court may deem just, equitable, and proper, including, without limitation, ordering defendant to publicly disseminate such corrective materials as may be necessary and appropriate.

C. On Counts III and IV of the complaint:

1. An award of damages, and exemplary damages, in amounts to be determined at the trial of this action, together with interest.

    2. A permanent injunction, enjoining and restraining defendant from licensing or purporting to license, the Banana design for any purpose, including, without limitation, the manufacture, sale, or marketing of any product that exploits in any way the Banana design, and from representing to third parties that it owns, or has any right, title, or interest in, the Banana design.

D. Awarding plaintiff its costs, and legal expenses, including, without limitation, reasonable attorneys' fees.

E. Awarding such other and further relief as the Court may deem just, equitable, and proper.

Dated: New York, New York
       January 11, 2012

_____
Christopher R. Whent
(CW 5599)

270 Madison Avenue, Suite 1410
New York, NY 10016-0601
(212) 683-5320
cwhent@sprintmail.com

_____
Clifford James
(CJ 5037)

260 Madison Avenue, 17th Floor
New York, NY 10016-2401
(212) 532-6333
cjames@cjtoplaw.com

*Attorneys for* Plaintiff
    The Velvet Underground