UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                         :

THE VELVET UNDERGROUND, A PARTNERSHIP,  :
BY ITS GENERAL PARTNERS, JOHN CALE AND  :
LOU REED,                      :

                   Plaintiff,    :

                     :

     -v-                    :

                     :

                     :

THE ANDY WARHOL FOUNDATION FOR THE   :
VISUAL ARTS, INC.,             :

                   Defendant.  :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 07 2012

12 Civ. 00201 (AJN)

<u>OPINION AND ORDER</u>

ALISON J. NATHAN, District Judge:

      In its Second Amended Complaint, Plaintiff The Velvet Underground ("VU") seeks, *inter*

*alia*, a declaration that Defendant The Andy Warhol Foundation for the Visual Arts, Inc. (the

"Warhol Foundation") has no copyright in a banana image designed by artist Andy Warhol (the

"Banana Design"). (SAC ¶¶ 2, 43). The Warhol Foundation has covenanted not to sue VU for

copyright infringement for VU's use of the Banana Design, and now moves under Rule 12(b)(1)

of Federal Rules of Civil Procedure to dismiss VU's declaratory judgment claim for lack of

subject matter jurisdiction.[1] Because this Court concludes that the covenant not to sue

eliminated any justiciable controversy between the parties over copyright in the Banana Design,

VU's claim for declaratory judgment is DISMISSED without prejudice.

---

[1] Where, as here, a party moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, a court must accept the material factual allegations in the complaint as true, but, unlike on a motion to dismiss under Rule 12(b)(6), need not draw inferences favorable to the plaintiff. *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A court may also consider materials outside of the pleadings to resolve any jurisdictional disputes. *J.S.*, 386 F.3d at 110; *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### Factual and Procedural Background

In the winter of 1965, a group of rock 'n' roll musicians calling itself "The Velvet Underground" caught the attention of artist Andy Warhol. (SAC ¶ 4). In 1966, Warhol announced that he was "sponsoring" the band, and designed the cover art for the band's first album, *The Velvet Underground & Nico*: an illustration of a banana, accompanied by a stylized "Andy Warhol" signature. (SAC ¶¶ 4-7). The album made its commercial debut in March 1967, but bore no copyright notice in the name of Andy Warhol. (SAC ¶ 6).

The Velvet Underground broke up as a band in 1972 (SAC ¶ 8); it last performed live in 1993 and will never perform live again (SAC ¶ 10). But the band continues to be recognized for its innovative first album and significant contributions to the music world. (SAC ¶¶ 4-7). In 2003, the music magazine *Rolling Stone* called *The Velvet Underground & Nico*—also known simply as *The Banana Album*—one of the "greatest albums of all time." (SAC ¶ 3). And the artwork on the cover of that album—the Banana Design—has, according to VU, become "a symbol, truly an icon, of the Velvet Underground." (SAC ¶¶ 9-11). According to VU, the Banana Design "has become so identified with the Velvet Underground . . . that members of the public, particularly those who listen to rock music, immediately recognize the Banana [D]esign as the symbol of the Velvet Underground." (SAC ¶ 11).

Even after the Velvet Underground formally broke up, it continued to use the Banana Design to promote the group: the Banana Design featured in promotional materials for the group's 1993 European reunion tour, and served as the the cover design for audio and video recordings of the 1993 tour as well as a tribute album released in 1995. (SAC ¶ 9). The VU also licensed the Banana Design in 2001 for a nationally run Absolut Vodka advertisement that

featured the Banana Design above the caption "Absolut Underground." (SAC ¶ 9 & Ex. 7).[2]

Since 1993, VU has also licensed the Banana Design for use on a variety of consumer goods—

from t-shirts, to key chains, to pillowcases. (SAC ¶¶ 10-13).

   The Warhol Foundation owns copyrights in a number of Warhol's works, which it too

licenses for use on consumer goods. (SAC ¶¶ 12–13, 23, 27–29). One of the designs it has

licensed is the Banana Design. (SAC ¶¶ 14–16, 30, 35).

   In December 2009, the Warhol Foundation wrote to VU, claiming that VU's uses of the

Banana Design infringed the Warhol Foundation's copyright. (SAC ¶ 30). VU rejected the

Warhol Foundation's claim of copyright in the Banana Design, and countered that the Banana

Design was in fact a trademark of—and had secondary meaning associating it with—VU. (SAC

¶ 31).

   VU first learned of the Warhol Foundation's own licensing of the Banana Design in April

2011 through a blog post on the website of *The New York Times Style Magazine*. (SAC ¶¶ 14 &

n.3, 33). The post reported that the Warhol Foundation had "agreed to lend" four Warhol works

"to a new series of iPhone and iPad cases, sleeves and bags from Incase." (SAC ¶¶ 14, 33). The

first in that series was to be "the iconic 1966 banana that Warhol created for the Velvet

Underground's self-titled album." (SAC ¶¶ 14, 33). Several months later, another blog post

about the product-series noted that among the earlier-featured designs was "the screen print of a

banana featured on the cover of the influential album 'The Velvet Underground & Nico.'" (SAC

¶¶ 15, 33).

   Upon learning of the Warhol Foundation's activities, VU notified the Warhol Foundation

that the Banana Design had secondary meaning as VU's mark, and demanded that the Warhol

---

[2] The fine print at the bottom of the ad also noted that the "banana is a trademark of the VU partnership." (SAC Ex. 7).

Foundation cease its licensing activities, which VU claimed infringed its mark and was likely to create consumer confusion over the goods' connection to VU. (SAC ¶¶ 14, 16, 18, 34). The Warhol Foundation rejected VU's demand, denying that VU had any trademark rights in the Banana Design, and asserting that the Warhol Foundation "may have" a copyright interest in the Banana Design. (SAC ¶ 18). VU sued.

VU's Second Amended Complaint asserts four claims. The first seeks a declaration that the Warhol Foundation has no copyright in the Banana Design. (SAC ¶¶ 25–44). The remaining three are alleging trademark claims, among other things, that the Warhol Foundation has infringed and misappropriated VU's trademark rights, for which VU seeks to recover damages and enjoin the Warhol Foundation from further licensing of the Banana Design.

After VU brought this action but before it filed its Second Amended Complaint, the Warhol Foundation gave VU a covenant not to sue for copyright infringement. (*See* James Decl. Ex. 2 ("Covenant") at 2). In the covenant, the Warhol Foundation "unconditionally and irrevocably" agreed to "refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity" against VU and related entities

> for infringement of any statutory or common law copyright in the Banana Design under the current, former, or any future copyright law of the United States—regardless of whether said Claim for copyright infringement accrues before, on, or after the Effective Date and regardless of whether said Claim arises from VU's or any other Cover Party's past, current or future conduct.

(Covenant at 2).

The Warhol Foundation now moves under Fed. R. Civ. P. 12(b)(1) to dismiss VU's claim for declaratory judgment on the ground that this Court has no jurisdiction to entertain it because

the covenant not to sue eliminated any actual controversy between the parties over the Banana

Design's copyright.

## DISCUSSION

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought.

28 U.S.C. § 2201(a).

"[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and

'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549

U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Because Article III of the Constitution authorizes federal courts to adjudicate only "Cases" or

"Controversies," U.S. Const. Art. III, § 2, an "actual controversy must be extant" not just "at the

time the complaint is filed," but throughout "all stages" of the litigation. *Alvarez v. Smith*, 558

U.S. 87, 130 S. Ct. 576, 580 (2009). The controversy must at all times remain "definite and

concrete, touching the legal relations of parties having adverse legal interests." *MedImmune*, 549

U.S. at 127 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240-241). "Throughout the litigation, the

party seeking relief must have suffered, or be threatened with, an actual injury traceable to the

defendant and likely to be redressed by a favorable judicial decision." *United States v. Juvenile*

*Male,* --- U.S. ---, 131 S. Ct. 2860, 2864 (2011) (quoting *Spencer v. Kemna,* 523 U.S. 1, 7

(1998)). As with any federal action, courts may not entertain actions for declaratory judgment

"when the parties are asking for an advisory opinion, when the question sought to be adjudicated

has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast v. Cohen*, 392 U.S. 83, 95 (1968) (footnotes omitted).

Under the Declaratory Judgment Act, a party who wishes to engage in conduct that may infringe another's intellectual property rights may seek a declaration that those rights are invalid without first exposing itself to liability. 28 U.S.C. § 2201(a) (providing that a plaintiff may obtain a declaration of "the rights and other legal relations of any interested party" in "case[s] of actual controversy"); *MedImmune,* 549 U.S. at 129-30. But the dispute must be "presented in the context of a specific live grievance," *Golden v. Zwickler*, 394 U.S. 103, 110 (1969), that justifies invoking the protection of the courts to shield the plaintiff against the defendant's "actual interference" with its legal interests. *Goosby v. Osser*, 409 U.S. 512, 517 (1973); *cf. MedImmune*, 549 U.S. at 129 ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'") (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)).

Thus, even when parties "continue to dispute the lawfulness" of the conduct that gave rise to the action, the matter is no longer justiciable if "that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez*, 130 S. Ct. at 580. Divorced from "any concrete actual or threatened harm," the parties' "abstract dispute about the law . . . falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.* at 580-81. Accordingly, in intellectual property cases, when a declaratory judgment plaintiff seeks a declaration that an asserted right is invalid or otherwise unenforceable and the declaratory defendant provides the plaintiff with a covenant not to sue for infringement of that right, that covenant can "extinguish[] any current or future case or controversy between the parties, and

divest[] the district court of subject matter jurisdiction." *Dow Jones & Co. v. Ablaise Ltd.*, 606

F.3d 1338, 1348 (Fed. Cir. 2010); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94-95 (2d

Cir. 2011) *cert. granted*, No. 11-982, 2012 WL 425184 (June 25, 2012) ("In trademark cases

seeking relief under . . . the Declaratory Judgment Act . . . a valid covenant not to sue may strip

district courts of jurisdiction."). "Whether a covenant not to sue will divest the trial court of

jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex*

*Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009); *see also Nike*, 663 F.3d at 96.  Courts

therefore consider, among other things, (1) the language of the covenant, (2) whether the

covenant covers future, as well as past, activity and products, and (3) evidence of intention or

lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to

develop new potentially infringing products that arguably are not covered by the covenant. *See*

*Nike*, 663 F.3d at 96.

### A. Scope of The Warhol Foundation's Covenant Not to Sue

Applying these factors here, this Court concludes that the Covenant divests this Court of

declaratory judgment jurisdiction over VU's claim that the Warhol Foundation holds no

copyright in the Banana Design.

The language of the Covenant is broad.  The Warhol Foundation has "unconditionally

and irrevocably covenant[ed] to refrain from making any claim(s) or demand(s), or from

commencing, causing, or permitting to be prosecuted any action in law or equity" against VU

and a host of related entities (the "Covered Parties") relating to copyrights in the Banana Design.

(Covenant at 2). *See Nike*, 663 F.3d at 96-97 (holding that declaratory judgment claim was

nonjusticiable because declaratory defendant, in covenant not to sue, "'unconditionally' and

permanently renounced its right to claim, demand or 'commenc[e], caus[e] or permit[] to be

7

prosecuted any action in law or in equity'").   The Covenant applies to all such claims without regard to whether they accrued "before, on, or after" the date of the Covenant and "regardless of whether said Claim arises from VU's or any other Cover[ed] Party's past, current, or future conduct." (Covenant at 2).

Despite this sweeping language, VU argues that the Covenant is not broad enough to eliminate the controversy between the parties because "it does not appear to cover VU's potential future licensees." (VU Opp. 15).  As the Warhol Foundation points out, however, the Covenant expressly provides that the Warhol Foundation will not sue any "person or entity claiming to be *in privity of contract* with VU." (Covenant at 2 (emphasis added)).  And because "the relationship between licensee and licensor is established by contract," (WF Reply at 3), the Covenant by its terms extends to licensees as well.  *See* Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 4:1 ("A license is a contract.").  "The breadth of the Covenant renders the threat of litigation remote or nonexistent," and facially appears to eliminate the prospect that the Warhol Foundation will assert any copyright it may have against VU or its licensees.  *See Nike*, 663 F.3d at 97-98.

The remaining question, then, is whether there is still some live, actual controversy—despite the Warhol Foundation's covenant not to sue—that warrants declaratory relief.   VU claims that there is, and sets forth several arguments in support of its view that  there remains a substantial controversy over the Warhol Foundation's claimed copyright in the Banana Design. None of them has merit.

## B. Live Controversy

### 1. Controversy over the Existence of the Warhol Foundation's Alleged Copyright

VU's first argument is that, although the Covenant may have eliminated the possibility that the Warhol Foundation will sue it for copyright infringement, the very fact that the Warhol Foundation *claims* it has a copyright interest in the Banana Design creates a substantial controversy between the parties. (See SAC ¶ 42; VU Opp., *passim*).   Specifically, VU argues that even if the Covenant forecloses the parties' dispute over whether VU *infringed* the Warhol Foundation's purported copyright, it does not resolve their dispute over whether the Warhol Foundation even *has* a copyright interest in the first place.  With this contention advanced, VU claims that an actual controversy over copyright in the Banana Design survives the covenant not sue.

But an actual controversy cannot be based on the mere existence of the Warhol Foundation's claim to copyright in the Banana Design.  *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("The mere existence of a potentially adverse patent does not cause an injury nor create an imminent risk of an injury . . . ."); *see also Wells v. Universal Pictures Co.*, 166 F.2d 690, 692 (2d Cir. 1948) (explaining that declaratory judgment was not available where there was no allegation that the copyright holder had asserted his copyright would be infringed or even threatened an infringement suit); *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 173 (S.D.N.Y. 1995) ("[T]he mere fact that a competitor may own a patent which plaintiffs claim a right to does not create jurisdiction for a court to issue a declaratory judgment. The need for judicial attention to this matter is neither real nor immediate.").  Absent a real and substantial prospect that the Warhol Foundation's alleged copyright will impact VU's legal interests, the Warhol Foundation's mere assertion that it holds such rights does not support a declaratory judgment claim. *See Nike*, 663 F.3d at 95-96 (explaining that, under *MedImmune*, there must been a real and substantial adversity of legal

interests); *U.S. Dept. of the Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, No. 12 Civ. 561, 2012 WL 2822547, at *10 (S.D.N.Y. July 3, 2012)("The mere fact that there is a dispute over some question . . . is not dispositive; if it were, the Declaratory Judgment Act could be invoked to answer any and every hypothetical question. Our constitutional system gives courts no such power.").

Although the Supreme Court has made clear that declaratory judgment jurisdiction may exist even in the absence of a reasonable apprehension of a lawsuit being filed, it has not dispensed with the requirement that there be a specific and immediate dispute between the parties. *See Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ 7352, 2010 WL 3629592, at *4 (S.D.N.Y. Sept. 16, 2010). For example, in *MedImmune*, the Supreme Court held that a dispute was sufficient to support a claim for declaratory judgment when a patent licensee asserted that the relevant patent was invalid and that royalties were therefore not due to the licensor, even though the licensee continued to pay the demanded royalties "under protest." *MedImmune*, 549 U.S. at 121-22. Comparing the case to those in which threatened action by the government was concerned, the Court held that notwithstanding that there was no reasonable apprehension that a lawsuit was imminent—because all royalties had been paid—the licensee had presented a sufficient dispute because this "self-avoidance of imminent injury [was] coerced" by the possibility of legal action. *Id.* at 129-31; *see also Nike*, 663 F.3d at 95-96. The Court did not rely, however, on the mere existence of the patent, absent this coercive impact, to determine that justiciable case existed—indeed, if this were sufficient to invoke a claim for declaratory judgment, the analysis the Court undertook in *MedImmune* would have been superfluous. *Cf., e.g., Adirondack Cookie Co. v. Monaco Baking Co.*, No. 11 Civ.1048, 2012 WL 1640565, at *5 (N.D.N.Y. May 9, 2012) ("[A] justiciable controversy requires some

10

affirmative act by the [declaratory defendant], such as 'creating a reasonable apprehension of an infringement suit,' 'demanding the right to royalty payments,' 'or creating a barrier to the regulatory approval of a product that is necessary for marketing.'")

Here, the Covenant does not merely hold litigation in abeyance, *see Nike*, 663 F.3d at 95-98, but rather vitiates any coercive force that the Warhol Foundation's alleged copyright might have had against VU and the other Covered Parties.  Unless the Warhol Foundation is, at the very least, *capable* of taking some action that threatens to damage VU or impair VU's ability to exercise its rights, VU remains  "legally free to market its product" even "in the face of an adversely-held" copyright.  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d at 1338.  Because the Warhol Foundation has covenanted not to sue VU under any claim of copyright, there is no coercive action the Warhol Foundation can take that would "endanger[] . . . the enjoyment of what [VU] claims to be [its] rights."[3]  *United States v. Doherty*, 786 F.2d 491, 498-99 (2d Cir. 1986) (Friendly, J.) (quoting Borchard, *Declaratory Judgments* 280 (2d ed. 1941)); *see also Bruce Winston Gem Corp.*, No. 09 Civ 7352, 2010 WL 3629592, at *5 (holding there was not "sufficient adversity for purposes of a declaratory judgment action" because it was "not a case where the plaintiff needs an adjudication of its rights so that it can conduct its business affairs without abandoning a mark or risking potential damages") (citing *Goya Foods, Inc. v. Tropicana Prods. Inc.*, 846 F.2d 848, 853–54 (2d Cir. 1988)).  Indeed, it is telling that in *Nike*, 663 F.3d at 92, the Second Circuit held that the declaratory defendant's furnishing a covenant not to sue the declaratory plaintiff for trademark infringement vitiated the declaratory plaintiff's claim for

---

[3] The conclusion that declaratory judgment jurisdiction is inappropriate here is further supported by the Declaratory Judgment Act's purpose:  to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication *without waiting until his adversary should see fit to begin suit*, after damage has accrued." *Doherty*, 786 F.2d at 498 (quoting *Luckenbach Steamship Co. v. United States*, 312 U.S. 545, 548 (2d Cir. 1963)) (emphasis added); *see also id.* ("Essentially, a declaratory relief action brings an issue before the court that *otherwise might need to await a coercive action brought by the declaratory relief defendant* . . . .") (quoting *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 539 (9th Cir. 1985) (emphasis added).

declaratory judgment, even though it had sought a declaration of non-infringement *and* invalidity. *Nike*, 663 F.3d at 92. In fact, the Second Circuit explicitly acknowledged and rejected the declaratory plaintiff's argument that disposing of a claim for "non-infringement does not deprive a court of jurisdiction to rule on the validity of a trademark or patent" even when the defendant covenanted not sue on those rights. *Id.* at 98; *see also Streck, Inc. v. Research & Diagnostic Systems, Inc.,* 665 F.3d 1269, 1284 (Fed. Cir. 2012) ("*MedImmune* does not stand for the proposition that an Article III case or controversy exists automatically whenever a competitor desires to mount a validity challenge.").

### 2. Controversy over the Warhol Foundation's Alleged Copyright Versus VU's Trademark Claim

VU also attempts to establish a concrete controversy by arguing that the Warhol Foundation apparently believes its claimed copyright "trumps VU's claim of trademark." (VU Opp. at 8). Therefore, VU claims, there is no escaping the issue: if the Warhol Foundation tries to shield itself from liability on VU's trademark claims by claiming it has a copyright in the Banana Design, the Court will anyway have to decide whether the Warhol Foundation in fact has a copyright interest in the Banana Design. (*Id.*). This argument also misses the mark.

Specifically, this argument runs counter to the principle that the Declaratory Judgment Act cannot be used to test the validity of an affirmative defense that a plaintiff anticipates the defendant will assert. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945). The existence of an actual controversy "must be evaluated on a claim-by-claim basis." *In re Rivastigmine Patent Litig. (MDL No. 1661)*, No. 05 M.D. 1661, 2007 WL 1154000 (S.D.N.Y. Apr. 19, 2007) (quoting *Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1399 (Fed. Cir. 1984)). An anticipated defense to *another* claim is merely "a collateral legal issue governing certain aspects" of that other claim; it does not raise a separate

12

and specific controversy of its own. *Calderon*, 523 U.S. at 747. Moreover, an anticipated

defense "can involve no justiciable question unless and until" the Warhol Foundation actually

*asserts* it; until then, there is no concrete controversy to resolve, and VU is merely seeking "an

advisory opinion as to the validity of the defense." *Coffman*, 323 U.S. at 324; *see also Calderon*,

523 U.S. at 747. On this point, it is noteworthy that the Warhol Foundation itself has asserted

that "as a matter of law a defendant's ownership of or license to use a copyrighted image is no

defense to a charge of trademark infringement." (WF Reply at 5).

### 3. Controversy over the Adverse Economic Impact of the Alleged Copyright

VU further argues that a justiciable controversy exists because the Warhol Foundation's

licensing of the Banana Design—which it justifies by claiming to have copyrights in the Banana

Design—will inflict "commercial injury" on VU and have a "material adverse economic effect

of VU's business." (VU Opp. at 13, 16). VU claims that the Warhol Foundation's "unlawful

licensing activities" may "impair" VU's ability to "exploit" its trademark rights in the Banana

Design, (SAC ¶ 42; VU Opp. at 5-6, 12, 15, 17), because those activities may "exclude VU from

the relevant market," (VU Opp. at 15), and limit VU's ability to "grant completely exclusive

licenses." (*Id.* at 16). But for at least two reasons these contentions still fail to establish an

actual Article III controversy over the Warhol Foundation's claimed copyright in the Banana

Design.

First, the "injury" VU claims it will suffer from the Warhol Foundation's "unlawful

licensing activities" is not "of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *See MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v.*

*Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Bruce Winston Gem Corp.*, No. 09

Civ 7352, 2010 WL 3629592, at *5 ("The defendants rightly object to the use of a declaratory

judgment action to construct the future framework of the interaction between the parties in the absence of a specific dispute about an imminent activity."). Declaratory relief "is available only for a 'concrete case admitting of an *immediate and definite* determination of the legal rights of the parties.'" *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 243 (1952) (emphasis added). "The disagreement must not be nebulous or contingent but must have taken on *fixed and final shape* so that a court can see what legal issues it is deciding." *Id.* at 244 (emphasis added). Notably missing from VU's allegations, however, is any concrete indication of how the Warhol Foundation putative copyright restrains VU's ability to freely exploit its trademark, or how the Warhol Foundation's actions pose "an *imminent threat* of such restraint." *Adirondack Cookie Co. Inc. v. Monaco Baking Co.*, No. 11 Civ. 1048, 2012 WL 1640565, at *6 (N.D.N.Y. May 9, 2012) (citing *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008)). In other words, VU does not specify how or when the Warhol Foundation will "impair" VU's plans. But without the "how," VU cannot show the controversy is "real"; without the "when," it cannot show the controversy is "immediate." *Cf. Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1349 (Fed. Cir. 2007) (concluding that there was "no evidence of a justiciable controversy" where a declaratory judgment plaintiff's potential future expansion plans were "vaguely defined"); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544 (S.D.N.Y. 2012); *cf. also Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2d Cir. 1963) ("[A] vague and unspecific 'desire' to practice an invention if a patent should turn out to be invalid smacks too much of the hypothetical and contingent.").

VU has simply expressed an "intangible worry, unanchored in time," that is "insufficient to support an 'actual or imminent' injury" and fails to present a justiciable controversy. *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 2012 WL 607560, at *8

14

(S.D.N.Y. 2012). Without a specific dispute over imminent activity, a declaratory judgment here would simply be "an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The Constitution gives this Court no power to issue such an opinion. *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993).

The VU's claim that the Warhol Foundation will exclude VU from the relevant market or preclude it from granting exclusive licenses also appears unsustainable given the breadth of the Covenant.[4] Indeed, VU's reliance on *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.*, 527 F.3d 1278 (Fed. Cir. 2008), in attempting to make this claim actually cuts against its position. *Caraco* was an Abbreviated New Drug Act ("ANDA") case decided based on that unique context and reflects a departure from the general rule applicable to declaratory judgment cases where a party has granted a covenant not to sue. *See id.* at 1289, 1296 (quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007)). In particular, the Federal Circuit explained that, in this context, absent a judgment of invalidity or noninfringement of *all* of the patents listed in the Orange Book as covering the generic drug, that drug cannot be marketed until those patents expire. *See id.* at 1296-97. Indeed, the Federal Circuit in *Caraco* expressly distinguished the ANDA context from "the ordinary infringement context" in which "even when a patentee maintains that its patents are valid and infringed by a potential defendant, a covenant not to sue allows the recipient to enter the marketplace." *Id.* at 1296.

Second, even setting aside the vague and speculative nature of VU's complaints, VU's allegations that the Warhol Foundation's claim of copyright will cause it to suffer "commercial

---

[4] On the question of exclusive licensing in particular, assuming that VU indeed prevails on its trademark claims in this litigation and is adjudged to have such rights, it is not clear what barrier there would be to VU licensing all of the trademark rights that it possesses in its putative mark. To the extent that VU cannot license the *copyright* in the Banana Design, the Court notes that, regardless of what rights the Warhol Foundation may hold, VU cannot license rights it does not claim to possess.

injury" and "material adverse economic effect[s]" do not, without more, establish an actual *legal*
controversy.  Declaratory relief is available only when "there is substantial controversy[]
between parties having adverse *legal* interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.
118, 127 (2007) (emphasis added) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
312 U.S. 270, 273 (1941)).  An "adverse economic interest," however, "is not a legally
cognizable interest sufficient to confer declaratory judgment jurisdiction." *Organic Seed
Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 2012 WL 607560, at *4
(S.D.N.Y. 2012); *see also Nike*, 663 F.3d at 97 (holding that, notwithstanding the declaratory
plaintiff's claim of an ongoing injurious effect, "potential investor concerns about infringement
lawsuits, despite [a broad covenant not to sue,] fail to establish the sort of genuinely adverse
legal interests" required under *MedImmune*).

Such adverse legal interests arise from disputes over legal rights. *Creative Compounds,
LLC v. Starmark Laboratories*, 651 F.3d 1303, 1316 (Fed. Cir. 2011).  In determining whether an
actual legal dispute exists, some courts have looked to whether there was an "underlying legal
cause of action that the declaratory defendant *could have brought or threatened to bring*, if not
for the fact that the declaratory plaintiff had preempted it." *Organic Seed Growers & Trade
Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 2012 WL 607560, at *4 (S.D.N.Y. 2012) (quoting
*Creative Compounds*, 651 F.3d at 1316 (Fed. Cir. 2011)) (internal quotation marks omitted,
emphasis added); *see also Arbitron, Inc. v. Kiefl*, No. 09 Civ.04013, 2010 WL 3239414, at *3
(S.D.N.Y. Aug. 13, 2010) ("Without an underlying legal cause of action, any adverse economic
interest that the plaintiff may have against the declaratory defendants is not a legally cognizable
interest sufficient to confer declaratory judgment jurisdiction.") (quoting *Microchip Tech. Inc. v.*

*Chamberlain Group, Inc.,* 441 F.3d 936, 942 (Fed. Cir. 2006)).[5]  Indeed, the three factors

discussed in *Nike* as to whether a covenant not to sue will preclude declaratory judgment

jurisdiction focus on whether there remains a prospect that the declaratory defendant retained a

potential legal cause of action notwithstanding a covenant not to sue.  *Nike,* 663 F.3d at 96.

Here, because the Warhol Foundation has broadly covenanted not to sue VU for VU's

potentially copyright-infringing uses of the Banana Design, there is no "underlying cause of

action" sounding in copyright for VU to "head off," and VU has not pointed to any concrete

legal detriment derived from the Warhol Foundation's possible claim of copyright from which it

needs to be "shielded."  *Doherty,* 786 F.2d at 500.  Declaratory relief is therefore unavailable.

*Id.*

### 4.  Controversy over Accounting of Revenues Relating to the Alleged Copyright

Finally, VU claims an actual controversy still exists because, as part of its declaratory

judgment claim, it seeks, under 28 U.S.C. § 2202, an "accounting of any revenues the Warhol

Foundation may have collected by virtue of its unfounded copyright claim." (VU Opp. at 6).

Section 2202 provides:  "Further necessary or proper relief based on a declaratory judgment or

decree may be granted, after reasonable notice and hearing, against any adverse party whose

rights *have been determined* by such judgment."  28 U.S.C. § 2202 (emphasis added).

Section 2202 thus merely provides that *after* a plaintiff prevails on its declaratory

judgment claims, *further* relief based on that declaratory judgment may be granted.  It is not an

independent cause of action.  *See Smith v. Lehman,* 689 F.2d 342, 345 n.5 (2d Cir. 1982) (noting

that § 2202 "furnish[es] additional remedies but do[es] not confer jurisdiction") (citing *Warner-*

---

[5] Although the cases cited above arise in the context of patent infringement, the same principles governing the propriety of declaratory judgment claims in patent cases have been held to apply to declaratory judgment claims relating to copyright.  *See, e.g., Pocketmedicine.com, Inc. v. John Wiley & Sons, Inc.,* No. 04 Civ. 8369, 2006 WL 785283, at *2 n.2 (S.D.N.Y. Mar. 23, 2006); *Matthew Bender & Co., Inc. v. W. Publ'g Co.,* No. 94 Civ. 0589, 1996 WL 223917, at *1 n.1 (S.D.N.Y. May 2, 1996):

17

*Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186 n.5 (2d Cir. 1977)).  Like the

Declaratory Judgment Act itself, it does not confer subject matter jurisdiction on the district

courts, but only provides a remedy if jurisdiction exists independently.  *Id.*; *see also Skelly Oil*

*Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

By eliminating any immediate, realistic prospect of injury to VU from the Warhol

Foundation's asserted copyright, the Warhol Foundation's Covenant Not to Sue has also

eliminated any live controversy under Article III.  VU's claim for a declaratory judgment that the

Warhol Foundation has no copyright rights in the Banana Design is therefore DISMISSED

without prejudice.[6]

Dated: September   , 2012
        New York, New York

 

ALISON J. NATHAN
United States District Judge

---

[6] The Court also notes that, even if declaratory judgment jurisdiction were available, it would exercise its discretion to decline to entertain VU's claim for substantially the reasons explained above.  *See Bentley v. Wellpoint Cos., Inc.*, 2012 U.S. Dist. LEXIS 21731, at *10 (S.D.N.Y. Feb. 17, 2012) ("The Second Circuit has provided two factors to help district courts properly exercise the broad discretion conferred by the DJA: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (quotation marks omitted).